487 So.2d 213 (1986)
Wilbur Earl HORNE
v.
STATE of Mississippi.
No. 55431.
Supreme Court of Mississippi.
April 16, 1986.
As Modified on Denial of Rehearing May 7, 1986.
Jon A. Swartzfager, Laurel, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court.
As a result of various investigations, officers of the Hattiesburg office of the Mississippi *214 Bureau of Narcotics had reason to believe the defendant Wilbur Earl Horne and others were engaged in the sale of narcotics in Laurel. On October 26, 1982, three agents, Charles M. Tyson, Tim Wilkinson, and Shirlene Anderson, went from Hattiesburg to Laurel with a view to purchasing narcotics from Horne and his confederates and apprehending them afterwards. Tyson and Wilkinson, after being joined by Jones County and City of Laurel police officials, proceeded to a point on Fourth Avenue near the Masonite Plant in Laurel. Agent Shirlene Anderson, who had been fitted with a concealed radio transmitter, proceeded in a separate unmarked car near the same area. She was to be the one to initiate contact with the alleged drug dealers. The other officers kept her under surveillance as best they could, but there were times during the operation when they could not see her. Agent Anderson testified that she began talking with one of the appellant's friends, a man named Tommy Lee McCoy, when she saw the defendant drive by in his car. The defendant was accompanied by another man, known to Anderson only as "Chico", but later identified as James Culpepper. The men in the car stopped and began talking to Anderson. Anderson testified that she asked about the possibility of purchasing some "sets" of talwin and pyribenzamine. (A "set" consists of one tablet each of these two drugs. When taken simultaneously they are said to produce an effect comparable to that of heroin.) After some initial hesitation, the two men proceeded to a nearby car wash followed by Anderson, where further negotiation took place. The upshot was the agent agreed to purchase three "sets" for $40; she said that Earl Horne handed the sets to Chico, who gave them to the agent. The agent then gave the money to Chico.
As a result of this transaction, Wilbur Earl Horne and James "Chico" Culpepper were indicted by the Jones County Grand Jury for the felonious sale of a controlled substance. Culpepper pled guilty, and Horne was tried alone in the Circuit Court of Jones County. He was convicted and sentenced to five years imprisonment. We reverse and remand for a new trial.

ARGUMENTS OF LAW

ASSIGNMENT OF ERROR NO. I

THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL AFTER THE DISTRICT ATTORNEY MADE THE STATEMENT THE DEFENDANT HAD COMMITTED A PRIOR CRIMINAL OFFENSE.
During the state's cross examination of the witness James "Chico" Culpepper, the following exchange occurred.
Q. Okay. Mr. Culpepper, were you one of those persons that brought those 3,000 sets of T's and blues from Alabama with Mr. Horne and another fellow?
MR. SWARTZFAGER: If the Court please, we object to that, and we move for a mistrial. That's highly prejudicial and I don't know what Mr. Casey is talking about, but I do know that injection of inflammatory remarks like that before this jury is totally improper, and that it was designed to inflame the jury.
THE COURT: It is highly improper and I sustain the objection to it. I instruct the jury to disregard it.
The defendant is being tried for the sale of drugs on the 26th day of October, 1982, and that's all he is being tried for.
MR. CASEY: If it please the court, Mr. Swartzfager asked the question 
THE COURT: I don't care about any argument on that point. Can you each disregard that  that last statement and answer?
(ALL JURORS NOD THEIR HEADS AFFIRMATIVELY)
THE COURT: All right, let the record show that the jury says that they can disregard it.
MR. CASEY: Just a moment, if the Court please * * * * * (pause)
Horne contends on appeal that the court should have granted a mistrial because this question was highly prejudicial to him and the prejudice was not cured by the judge's corrective actions. As the state correctly points out, the granting of a mistrial is *215 within the sound discretion of the trial judge. Coley v. State, 378 So.2d 1095, 1097 (Miss. 1980); Logsdon v. State, 183 Miss. 168, 170, 183 So. 503 (1938).
Horne responds by pointing out a line of cases holding that where "incompetent" and "inflammatory" statements are heard by the jury, prejudice to the defendant will be presumed. Smith v. State, 457 So.2d 327, 335-36 (Miss. 1984), Tudor v. State, 299 So.2d 682, 685-86 (Miss. 1974); McDonald v. State, 285 So.2d 177, 178 (Miss. 1973). The appellant's argument is correct so far as it goes; however, it overlooks one important element of this doctrine. In Tudor, Justice Walker said, "We will reverse [such] a conviction unless it can be said with confidence that the inflammatory material had no harmful effect upon the jury." 299 So.2d at 694. In the present case, the trial judge went to unusual lengths to remove any effect the testimony may have had on the jury. Not only did he sustain the objection to the question; he sharply rebuked the prosecutor, calling the question "highly improper." Not only did he instruct the jury to disregard it; he polled the jurors as to whether or not they could disregard it, and each juror responded affirmatively. In none of the cases cited by appellant were such thorough curative measures employed by the trial judge. This appears to be a case in which it can be said with confidence that the inflammatory material had no harmful effect on the jury. Indeed, from this record, it seems this incident was probably more embarrassing to the prosecutor than the defendant.
Finally, it can hardly be overemphasized that the trial judge is in a better position to assess the effect of such an incident than is this Court on appeal. This Court recently remarked that "the circuit judge is in the best position to weigh the consequences of the objectionable argument and unless serious and irreparable damage has been done, admonish the jury then and there to disregard the improper comment." Johnson v. State, 477 So.2d 196, 210 (Miss. 1985). See also, Peyton v. State, 286 So.2d 817, 818-19 (Miss. 1973).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. II

THE TRIAL COURT ERRED IN LIMITING THE CROSS EXAMINATION OF STATE'S WITNESS SHIRLENE ANDERSON.
During the defense's cross examination of agent Anderson, the following occurred:
Q. Well, when you made this case against him and the indictment was brought against him, why didn't you testify against him on those?
A. On who?
Q. On this man over here. If you say that he had committed another crime on the same day that you say. Why didn't you tell the grand jury about that, too, so he would be indicted on that charge that you saw?
MR. CASEY: We object to that. That's not relevant to this case here.
MR. WALTERS: We object to that, your Honor.
THE COURT: Sustained.
MR. SWARTZFAGER:
Q. Why did you show these other officers, these other agents, those pills when you got back to "the hole?"
A. I just showed them to them.
Q. You showed it to them is because they required you to show them, didn't they?
A. No, it's not required.
Q. Well, the fact is, Shirlene, is that you have messed up so much evidence over the years by putting it in different packages.
MR. CASEY:  we are going to object to this.
Q.  and they don't trust you to handle evidence, do they?
MR. CASEY: That's simply not relevant and we object to this, your Honor.
THE COURT: Sustained.
MR. SWARTZFAGER:
Q. Are you not the only agent in the State of Mississippi that is required to show what you get?
A. No, sir.

*216 MR. CASEY: We are going to object to that as not being relevant, your Honor.
THE COURT: Sustained.
MR. SWARTZFAGER:
Q. Are you not the only agent in the State of Mississippi that is surveilled by other officers to make sure that you actually do buy something rather than taking it out of the bottles down there or some place else to get it?
MR. CASEY: We object to this. She has already stated what the standard procedure is.
THE COURT: Sustained.
MR. SWARTZFAGER:
Q. What is your quota of people that you have to produce as an undercover agent, Shirlene  MR. CASEY:  we are going to object to that Your Honor Q.  every month?
MR. CASEY:  unless there is some predicate laid for a quota.
THE COURT: Sustained.
Horne now contends that the trial judge's ruling essentially disabled him from conducting an effective cross examination of Agent Anderson. Mississippi has afforded defense counsel wide latitude in cross examination. The case of Myers v. State, 296 So.2d 695, (Miss. 1974), relied upon by Horne, is a good example of this Court's solicitude for wide ranging cross examination. In Myers, this Court stated: "The right of confrontation and cross examination ... extends to and includes the right to fully cross examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." Myers, 292 So.2d at 700.
The state counters by citing numerous cases for the well-known rule that where evidence is excluded, the issue can only be preserved on appeal by making a proffer of the excluded testimony for the record. However, this overlooks the fact that on cross examination, the examining counsel does not necessarily know how the witness is going to respond, and so can make no reliable proffer of what the testimony may have been. In Valentine v. State, 396 So.2d 15, 17 (Miss. 1981), this Court recognized that fact and held that where cross examination on a material issue is restricted, the party complaining of it on appeal need not make a proffer for the record. To like effect in civil cases is Harris v. Buxton T.V., Inc., 460 So.2d 828, 833-34 (Miss. 1984). To the extent that Johnson v. State, 416 So.2d 679, 681 (Miss. 1982), may be to the contrary, it is overruled.
In the present case, the defense counsel was clearly attempting to show by cross examination that agent Anderson had, in the past, been so incompetent in procuring and handling drug evidence, as to necessitate having her work checked by other agents. This was a question material to the case, and, to use the language in Myers, it certainly "bears on the weight and worth" of her testimony. It therefore appears that the trial judge erred in refusing to allow cross examination on this point.[1]

ASSIGNMENT OF ERROR NO. III

THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL WHEN THE PROSECUTOR ATTEMPTED TO IMPEACH A DEFENSE WITNESS BY REFERRING TO ALLEGED OFFENSES WHICH DID NOT RESULT IN CONVICTIONS.
During the cross examination of James "Chico" Culpepper by the prosecution, the following testimony was elicited:

*217 Q. And have you ever been to Riverhead, New York, before?
A. Yes, sir.
Q. Have you ever been to Hauppage, New York, before?
A. Sir?
Q. Hauppage, New York?
A. I don't know.
Q. What other towns in New York have you been to?
A. Well, I done been to a lot of cities and places.
Q. Have you been to Raleigh, North Carolina?
A. Have I been there?
Q. Yes.
A. I have been to a lot of places.
Q. Have you ever been to Elmira?
A. Yeah, I have been there.
Q. What is Elmira?
A. What is Elmira?
Q. Is that a city?
A. Well, it's a city, too; right.
Q. What's in Elmira?
A. What's in it?
Q. Yeah. What did you do in Elmira when you were up there?
A. To the best of my recollection now, I don't remember.
Q. Have you ever been to Cleveland, Ohio?
A. Have I ever been to Cleveland?
Q. Um hum (affirmative response)
A. Yes, sir, I been through there.
Q. You have been charged with rape, attempted rape, burglary, robbery, concealed weapon 
MR. SWARTZFAGER:  if the Court please, we object to what he's been charged with  MR. CASEY:  you Honor, this is not a defendant, but this is a witness.
MR. SWARTZFAGER: The issue is what he has been convicted of.
THE COURT: I sustain the objection.
MR. CASEY
Q. Have you ever been convicted of selling any pills before?
A. No, sir.
Q. That's right, never even been charged with selling any pills before, have you?
A. No, sir.
Q. In your whole lifetime?
A. No, sir.
Q. But you have been charged with a lot of other things, haven't you?
A. Well, when I was a  MR. SWARTZFAGER:  if the Court please, we object.
A.  when I was a juvenile.
THE COURT: Sustained.
Horne correctly states that before the adoption of the new Rules of Evidence this year, it was the rule in Mississippi that a witness could be impeached on cross examination by references to alleged crimes, only if they resulted in convictions. See e.g. Blanks v. State, 451 So.2d 775 (Miss. 1984); Vick v. Cochran, 316 So.2d 242 (Miss. 1975); Allison v. State, 274 So.2d 678 (Miss. 1973); Murray v. State, 266 So.2d 139 (Miss. 1972). An exception exists where the cross examination is intended to show bias or interest in the cause, Hall v. State, 476 So.2d 26 (Miss. 1985), but in the present case, the cross examination was not so intended and therefore the appellant's view is substantially correct. Moreover, the appellant also points out, this Court has held that where this particular error is concerned, reversal is required, even where the trial judge takes thorough and emphatic corrective measures. Johns v. State, 255 So.2d 322, 324 (Miss. 1971).
The state offers no substantive response to this, but objects that the record shows that Horne did not move for a mistrial. Horne's rebuttal brief concedes that he did not move for a mistrial, but argues that this defect was cured by motions made at the close of the testimony. It is hard to understand why the appellant felt it necessary to "concede" this, since the record clearly shows that one of those motions was a motion for a mistrial. The record says that the "defendant renews his motions previously filed ... and additionally moves for a mistrial" because of references to past charges not resulting in convictions. *218 It appears, therefore, that this point was successfully preserved for appeal, and furnishes a basis for reversal.
Because of the errors discussed above, the judgment of the circuit court must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] Today's result is consistent with the Mississippi Rules of Evidence, effective January 1, 1986, on two counts. First, the substance of the testimony sought to be elicited from Agent Anderson "was apparent from the context within which questions were asked." MRE 103(a)(2). Indisputedly, defense counsel was attempting to show that in the past Agent Anderson had made numerous mistakes in the handling of drug evidence. Second, the Official Comment to Rule 103 provides:

Harris v. Buxton, T.V., Inc., 460 So.2d 828 (Miss. 1983) held that no ofer of proof was necessary where a party was improperly prohibited from cross-examining a witness. Rule 103(a)(2) does not affect this holding. (Emphasis added)