651 So.2d 1074 (1995)
Lonnie Lee NALLS a/k/a Lonnie Lee Nall
v.
STATE of Mississippi.
No. 91-KA-01072-SCT.
Supreme Court of Mississippi.
March 9, 1995.
*1075 Martin A. Kilpatrick, Greenville, for appellant.
Michael C. Moore, Atty. Gen., Jeffrey A. Klingfuss, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., BANKS and JAMES L. ROBERTS, Jr., JJ.
BANKS, Justice, for the court:
In this cocaine possession case we consider the question whether it was error to prohibit questions concerning a state crime lab analyst who had performed an analysis of the drugs in question but was later fired for tampering with drugs. The results of his analysis were conveyed to the jury. We conclude that the court erred but that such error was harmless under the circumstances.

I.
On March 2, 1991, as a result of a Central Delta Drug Task Force (CDDTF) sting operation, Lonnie Nalls was arrested and charged with possession of cocaine with an intent to sell and distribute. Near the area where Nalls was apprehended, a CDDTF agent retrieved a matchbox containing 15 rocks of an unidentified substance from the ground where Nalls had thrown it while in flight. A field test, performed by a CDDTF agent shortly after Nalls' arrest, revealed the substance to be cocaine. The cocaine was then packaged in an envelope with the field test results, noting the time, date, suspect, arrest number, charge and complaint number on an evidence tag attached to the envelope and mailed via U.S. Mail to the Mississippi Crime Laboratory in Jackson, Mississippi. At the crime lab, it was again tested by two forensic scientists on two different occasions. The first scientist, Jon Maddox, who had access to all 15 rocks, determined that the substance was cocaine. The second scientist, Ted Chapman, also determined that the substance was cocaine. However, Chapman had access to only 13 rocks of cocaine.
At trial, Chapman testified on direct, without objection, that he and former forensic scientist Maddox had performed separate tests on the rocks attributed to Nalls and that both times the result indicated that the rocks were cocaine. On cross-examination, defense counsel attempted to question Chapman about Maddox's past conduct at the crime lab which resulted in his termination, to which the prosecutor objected. The court sustained the objection despite defense counsel's argument that the door for such a question was opened during direct examination.
Subsequently, after Chapman left the stand, defense counsel made several motions. First, defense counsel moved to make an offer of proof regarding the integrity of the cocaine attributed to Nalls. It was claimed that had Chapman been allowed to testify about Maddox's conduct at the crime lab, Chapman would have testified that Maddox's termination from the crime lab was the result of his alleged tampering and pilfering of drugs. The State denied that Chapman would testify that Maddox was fired for those reasons. The court adhered to its earlier ruling after hearing the proffer.
Defense counsel then moved that the court withdraw the drugs in question from evidence because of gaps in the chain of custody. *1076 Defense counsel argued that pursuant to the testimony that had been offered by the State after the drugs had been admitted into evidence, there was no written proof of when the drugs were actually sent to the crime lab. This motion was also denied by the court.
Defense counsel's final motion was for a directed verdict. It was argued that the State had failed to make a showing of possession with intent to sell as charged in the indictment. The court denied the motion for a directed verdict as to the question of possession but granted a direct verdict as to the question of intent. The court reasoned that mere possession of drugs was not sufficient to meet the burden of proof on the intent question.
Nalls was convicted and sentenced to a six year term for possession of cocaine. He perfected an appeal to this court, raising the following issues:

II.

A.
Nalls argues that the trial court erroneously rejected the offer of proof and that defense counsel's cross-examination of Chapman was unduly restricted.
The primary reason for an offer of proof is to get the proposed answer and expected proof in the record for the benefit of the appellate court, so that the appellate court may know what evidence is being excluded by the trial court. Brown v. State, 338 So.2d 1008 (Miss. 1976); King v. State, 374 So.2d 808 (Miss. 1979). However, "[w]here cross examination on a material issue is restricted, the party complaining of it on appeal need not make a proffer for the record." Horne v. State, 487 So.2d 213, 216 (Miss. 1986), citing Valentine v. State, 396 So.2d 15, 17 (Miss. 1981).
In this case, contrary to Nalls' contention, the trial court did not reject the offer of proof. Rather, after allowing defense counsel the opportunity to argue the merits of evidence regarding Maddox's conduct as a crime lab analyst, the trial court re-sustained the prosecutor's objection to that line of questioning. In any event, the defense was still able to preserve the record for appellate review. Furthermore, even if the trial court had rejected Nalls' offer of proof, it would not be fatal to his contention in this regard under our precedents. Horne v. State, 487 So.2d 213, 216 (Miss. 1986), citing Valentine v. State, 396 So.2d 15, 17 (Miss. 1981).
While the point of error specifically assigned by Nalls is without merit, we do find that the lower court erroneously and unduly restricted the cross examination of Chapman.
Mississippi has afforded defense counsel wide latitude in cross examination. Horne v. State, 487 So.2d 213 (Miss. 1986). Furthermore, "[t]he right of confrontation and cross examination... extends to and includes the right to fully cross examine the witness on every material point relating to the issue to be determined that would have bearing on the credibility of the witness and the weight and worth of his testimony." Horne, 487 So.2d 213, 216 citing Myers v. State, 296 So.2d 695 (Miss. 1974). This right of confrontation and cross examination also extends to hearsay declarants. When a hearsay statement has been admitted into evidence, the credibility of the hearsay declarant may be attacked to the extent that is allowable had the hearsay declarant actually testified at trial. See Miss.R.Evid. 806; Miss.R.Evid. 608.
Chapman's testimony regarding Maddox's analysis of the substance in question is clearly hearsay. Kettle v. State, 641 So.2d 746 (Miss. 1995). Therefore, Nalls should have been allowed to impeach Maddox, by cross examining Chapman about what he knew of Maddox's conduct. This is especially true, since the State used Chapman to bolster its case regarding the integrity of the crime lab tests by showing that Maddox also identified the substance attributed to Nalls as cocaine. The trial court erred in restricting the defense counsel's cross examination of Chapman.
Despite the error, we affirm the conviction because we find the error to be harmless. Although Maddox's conduct in the crime lab, at best, raises questions about the integrity of the cocaine attributed to Nalls once it reached the crime lab, the results of the field test on the rocks retrieved at the scene of the *1077 crime are undisputed. Moreover, there is no evidence that some other rocks were substituted for those obtained from Nalls and Chapman's independent analysis of those rocks is similarly undisputed. The evidence supports a jury verdict that Nalls was guilty of possessing cocaine to the extent that we can say beyond a reasonable doubt that no juror would have decided differently had they been exposed to information concerning Maddox's transgression.

B.
Nalls' contention that the State failed to prove the chain of custody of the cocaine from the time it was actually received by the crime lab to the time it was analyzed by Chapman is procedurally barred. "We require that counsel not only make a condensed statement of the case but also support propositions with reasons and authorities in each case." Roberson v. State, 595 So.2d 1310, 1318 (Miss. 1992) citing Kelly v. State, 553 So.2d 517, 521 (Miss. 1989).
In reviewing the facts of this case, the chain of custody of the cocaine has been fastidiously set forth. The record reveals the following: (1) that on March 2, 1991, a CDDTF agent retrieved the cocaine from where it had allegedly been thrown to the ground; (2) that he took it to the Sheriff's Department where he conducted a field test on it; (3) that he packaged the cocaine in an envelope with the lab report noting the time, date, suspect, arrest number, charge and complaint number on an evidence tag attached to the envelope; (4) that he stored the envelope in a safe at the sheriff's department for 4 days; and (5) that he mailed the envelope on March 6, 1991 to the crime lab via U.S. Mail. The record also reveals that the cocaine was received at the crime lab via U.S. mail on March 7, 1991. Furthermore, Maddox was the first to analyze the cocaine and Chapman analyzed the cocaine the second time after retrieving it from the crime lab vault where it had been kept.
This Court has held that the test with respect to whether there has been a break in the chain of custody of evidence is whether there is an indication of probable tampering. Nix v. State, 276 So.2d 652 (Miss. 1973). See also Wells v. State, 604 So.2d 271 (Miss. 1992); Lambert v. State, 462 So.2d 308 (Miss. 1984); Morris v. State, 436 So.2d 1381 (Miss. 1983); Harrison v. State, 307 So.2d 557 (Miss. 1975) and Grady v. State, 274 So.2d 141 (Miss. 1973). Furthermore, this Court has also held that matters regarding the chain of custody of evidence are largely left to the discretion of the trial judge and will not be disturbed unless there appears to be an abuse of discretion. Morris v. State, 436 So.2d 1381 (Miss. 1983); Nix v. State, 276 So.2d 652 (Miss. 1973). Based upon these facts this Court finds that the physical evidence in this case, i.e. the cocaine, has an unbroken chain of custody and therefore admissible Evans v. State, 499 So.2d 781, 783 (Miss. 1986).
As a side bar, we note with regard to Maddox's inappropriate conduct, which resulted in his termination at the crime lab, there is no evidence in the record which suggests that Maddox handled the evidence in this particular case improperly. Thus, this contention is not only procedurally barred, it is without merit.

III.
For the foregoing reasons the judgment of the circuit court is AFFIRMED.
CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF SIX (6) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE TO BE SERVED CONSECUTIVELY WITH THE SENTENCE NOW BEING SERVED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
SULLIVAN, J., dissents with separate written opinion joined by McRAE, J.
PITTMAN, J., not Participating.
SULLIVAN, Justice, dissenting:
The right to rigorous cross examination is the sharp point of the finest weapon of the trial lawyer. When we find that undue restriction of cross examination is harmless error we announce that a duel between a *1078 man armed with a Toledo blade and a man armed with a tinker toy is a fair fight. It is not. I would reverse.
McRAE, J., joins this opinion.