CHANDLER, J.,
for the Court.
¶ 1. On March 9, 2006, Johnny W. Ladd was convicted of the statutory rape of A.S.,[1] who was fifteen years old at the time of the incident. The court sentenced Ladd to twenty years in the custody of the Mississippi Department of Corrections, with five years to be suspended upon completion of fifteen years, and five years of post-conviction supervision. Aggrieved, Ladd appeals. He asserts that the trial court erred by doing the following:
I. Sustaining the State’s objection to Ladd’s testimony concerning the theft of his income tax refund by his ex-wife, Sandy Ladd
II. Denying Ladd’s motion requesting expert assistance
III. Sustaining the State’s objection to Ladd’s cross-exam of the State’s witness, Tracey Beasley, concerning A.S.’s statement that the victim had previously engaged in sexual intercourse, which was a contradiction of her testimony
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. The alleged victim, A.S., testified at trial that, on the night of November 1, 2003, she was staying at the home of her Aunt K.S. Besides A.S. and K.S., Johnny Ladd and his wife also stayed over that night, along with a number of children who were all under nine years old. According to K.S., only Ladd’s wife, Sandy, and their children were supposed to stay over. It was not until K.S. went to pick them up that Sandy asked if Ladd could stay over too. Nevertheless, everyone stayed over and went on a hayride that night. A.S. testified that, during the hayride, she heard Ladd ask K.S. who she was, and he told her aunt that A.S. had filled out.
¶4. Later on, after taking two Tylenol PM pills for a headache and then going to sleep, A.S. awoke upon experiencing a pain. She found Ladd on top of her and having sex with her. She said Ladd removed her pajama pants and underwear and put his penis in her vagina. A.S. had fallen asleep on the couch that night, and there were a number of other children also asleep in the living room. While Ladd was on top of her, A.S. said she was in shock and could not do anything. She said she was afraid that she would wake up the other children if she screamed. After Ladd finished, she said that he put her clothes back on and went outside.
¶ 5. According to the testimony of A.S. and her aunt, A.S. came in crying and woke up her aunt because she wanted to see her grandmother and go to the hospital. KS. took her to Neshoba General Hospital, where they examined A.S. using a sexual assault evidence kit. After her mother came to get her, she took A.S. to see another doctor at the Alliance Laird Hospital. Later in the morning, after Ladd had gone back to bed with his wife, Officer Vince Carter of the Neshoba County Sheriffs Department showed up at K.S.’s house and arrested him. Ladd was later taken to the hospital, where he was also examined, and evidence was collected from him for a sexual assault evidence kit.
¶ 6. In addition to A.S. and her aunt, the prosecution put on the doctors and nurses who examined A.S. after the incident and the analysts who tested the semen and blood collected in the sexual assault evidence kit. The doctors and nurses testified to the injuries sustained by A.S., the presence of semen, and the methods used to collect semen and blood samples from Ladd and the victim. The analysts confirmed that Ladd’s DNA from a blood *144 sample matched the semen taken from the victim. They all testified that proper procedures were followed and that there was no contamination of the evidence.
¶ 7. When he took the stand, Ladd denied that he had sex with A.S. He also claimed that his comment regarding A.S. was that she had grown up, and he denied that it had any sexual connotation to it. He claimed that the person he had sex with that night was A.S.’s Aunt K.S., who then had access to the condom with his semen in it. He said that K.S. had invited him over so that they could have sex and that they had previously had sex a year before.
¶ 8. An indictment on September 1, 2005, charged that Ladd, being over twenty-one, had sexual intercourse with A.S., who was under sixteen at the time. After a one-day trial, the jury convicted Ladd of statutory rape.
ISSUES AND ANALYSIS
I. Testimony that Ladd’s ex-wife stole his tax returns
¶ 9. Ladd’s first point of error is that the trial court erred in sustaining the State’s objection to his testimony that his ex-wife, Sandy, stole his tax returns. He argues that this act shows that there was a strained relationship between him and his ex-wife and that K.S. had a desire to help Sandy in a possible divorce action.
¶ 10. The admission of evidence is within the discretion of the trial court. Culp v. State, 933 So.2d 264, 274(¶ 26) (Miss.2005). We will only reverse a decision on whether to admit evidence if the trial court abused its discretion. Id.
¶ 11. Ladd’s argument is completely irrelevant to the charge at hand. Whether Ladd’s ex-wife stole his tax returns had nothing to do with the statutory rape charge, nor did it connect her to K.S. in any way, as Ladd suggests. His claim that this was evidence that tended to show KS.’s desire to help Sandy in a divorce action is also misguided because it was Ladd who later filed for divorce from Sandy.
¶ 12. We do not find that the judge erred in sustaining the objection to this testimony because it was irrelevant. It was well within the judge’s discretion to do so. This issue is without merit.
II. Expert assistance
¶ 13. Ladd’s next argument is that he was entitled to the appointment of an expert witness to help him prepare a defense to the DNA evidence presented by the State. He claims that, because the trial court found him indigent and appointed a public defender for him, he was also entitled to appointment of such an expert. Ladd further argues that the court erred by denying his request for expert assistance and basing its ruling largely on the fact that he did not offer any evidence of his indigence. He believes the court should have found he was indigent from the fact that it had appointed an attorney to represent him.
¶ 14. The trial court has broad discretion in deciding whether or not to appoint or provide funds for an expert. Weatherspoon v. State, 732 So.2d 158, 161(¶ 9) (Miss.1999). The denial of expert assistance is reviewed on a case-by-case basis, and we will only reverse if the appellant can show that the trial court’s abuse of discretion was “so egregious as to deny him due process and where his trial was thereby rendered fundamentally unfair.” Id. at 160(¶ 6) (quoting Johnson v. State, 529 So.2d 577, 589-90 (Miss.1988)).
¶ 15. The supreme court has applied the factors set forth in Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d *145 53 (1985), to determine whether a criminal defendant was entitled to be provided expert assistance to examine DNA evidence:
The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.
Coleman v. State, 697 So.2d 777, 782 (Miss. 1997) (quoting Ake, 470 U.S. at 77, 105 S.Ct. 1087). The defendant must also make a showing that expert assistance would significantly aid the defense. Id.
¶ 16. The supreme court has also enumerated other factors to consider when a defendant is denied expert assistance:
In determining whether a defendant was denied a fair trial because of failure to appoint or allow funds for an expert, we consider whether and to what degree the defendant had access to the State’s experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State’s experts.
Hughes v. State, 892 So.2d 203, 209(¶ 8) (Miss.2004). We will also consider the extent to which the State’s case depends on the expert. Id.
¶ 17. In the present case, Ladd’s counsel stated at the pretrial hearing that he could not argue he did not have access to the experts, nor could he claim an inability to cross-examine them. The State’s experts were not sought out by the State solely to testify against Ladd. The experts who testified were the individuals who examined A.S. at the hospital and who performed the DNA and blood analysis. Their risk of prejudice or incompetence is, therefore, low. Furthermore, Ladd did not want the court to appoint an expert that he might call at trial. He only wanted an expert to assist in the preparation of a defense. Trial counsel’s argument was that he would be unable to question the State’s experts without the opportunity to consult with an expert who had reviewed the records. This argument, however, is in contrast to counsel’s assertion that he had been involved in a “good number” of sex crime cases.
¶ 18. In the same pretrial hearing, Ladd’s counsel could not point to anything that he might discover with the aid of an expert that he could not question the State’s experts about himself. Ladd was certainly welcome to cross-examine the experts on any matters he wished, including any “mathematical error,” which is referred to in appellant’s brief. However, any mention of any such error is absent from the trial transcript. Even without consulting an appointed expert, he managed to question the experts about a mi-crobacterial growth, which was one of the issues he brought up at the pretrial hearing. However, he did not argue that it contaminated the sample. His argument, which the expert conceded, was that it could indicate prior sexual activity by A.S.
¶ 19. As for the value of the expert to Ladd, while he stated at trial that he did not have sex with the victim, at no point does he argue that the sperm collected from the victim did not belong to him. Instead, Ladd’s argument at trial seemed to be the same one he now makes on appeal. He claims that K.S. collected his semen in a condom after they had sex and planted it in A.S.’s vagina. His defense was not that it was not his semen, but that K.S. put it there to help Sandy get a divorce. At trial, he did support this defense when his cross-examination of the experts revealed that they could not and did not test whether the semen had been *146 planted after being removed from a condom. An expert witness would not have helped Ladd in preparing this defense, and, as stated previously, he did not even want an expert to testify at trial. His only reason for requesting an expert was so that he could properly cross-examine the witnesses put on by the State.
¶ 20. Based on the defense that Ladd presented at trial, and his argument on appeal, we do not find that the trial judge abused his discretion by not appointing an expert for Ladd. He did not show that an expert would have significantly aided his defense. This issue is without merit.
III. The victim’s prior sexual activity
¶ 21. Ladd’s final point of error is that the court erred in sustaining the State’s objection to his questioning of the nurse, Tracy Beasley, concerning the victim’s sexual history. Ladd claims that A.S. told Ms. Beasley that she had previously had sex. When cross-examined by Ladd about her sexual history, however, A.S. said that she had never had sex. Ladd argues two points in support of this issue: that a prior inconsistent statement may be used for impeachment, and that an accused may impeach a hearsay declarant.
¶ 22. Ladd is correct in his assertion that Rule 613 of the Mississippi Rules of Evidence allows impeachment of a witness by use of a prior statement. However, his reliance on Nalls v. State, 651 So.2d 1074, 1076 (Miss.1995), and his argument that he may impeach a hearsay declarant is irrelevant. In Nalls, the supreme court pointed out that it was permissible to attack the credibility of a hearsay declarant when a hearsay statement had been admitted into evidence. Id. However, Nalls has nothing to do with Ladd’s attempt to put into evidence a hearsay statement to impeach the credibility of a witness who took the stand.
¶ 23. First, Ladd did not lay the proper predicate to introduce any prior inconsistent statement by the victim. Al-Fatah v. State, 916 So.2d 584, 591(¶21) (Miss.Ct. App.2005). “The attorney must set the scene for the victim, asking whether on a particular day, in the presence of particular witnesses, the victim made a particular statement.” Id. (citing Bush v. State, 667 So.2d 26, 28 (Miss.1996)). In his cross-examination of A.S., Ladd only asked her if she had ever had sex before the night of the alleged rape. He never questioned her about any statements made to the nurse. Instead he sought to cross-examine Ms. Beasley about what A.S. told her.
¶24. More importantly, Ladd fails to address Rule 412 of the Mississippi Rules of Evidence, which was the basis for disallowing the testimony about A.S.’s sexual history. Rule 412 provides that past sexual behavior of an alleged victim of a sexual offense is not admissible unless it is (1) evidence of past sexual behavior with others to show that someone else was the source of semen, pregnancy, disease, or injury; (2) past sexual behavior with the defendant to show consent; or (3) false allegations of past sexual offenses made by the victim. Those exceptions, however, are not applicable to this statutory rape charge because Ladd did not offer the testimony to rebut the source of the semen or to establish consent, and there was no mention of past false allegations.
¶ 25. Besides being irrelevant to the charge at hand, there is also nothing in the record indicating that Ladd complied with the requirements of Rule 412(c)(1). Under Rule 412(c)(1), a- party intending to offer evidence of a victim’s past sexual behavior must submit a written motion to offer that evidence no later than fifteen days before trial. We have previously ruled that it was proper to disallow impeachment of a victim of a sexual offense when the defendant *147 failed to follow such procedures. Aguilar v. State, 955 So.2d 386, 393(¶22) (Miss.Ct. App.2006).
¶ 26. The supreme court has stated that whether an alleged rape victim was a virgin is irrelevant to whether she was raped. Heflin v. State, 643 So.2d 512, 518 (Miss. 1994) (overruled on other grounds) (citing Goodson v. State, 566 So.2d 1142, 1148 (Miss.1990)). We also note once more that admission of evidence is within the discretion of the trial judge. Culp, 933 So.2d at 274(¶ 26). In this case, the judge determined that Ladd was attempting to bring in the statement concerning AS.’s sexual history for more than the purpose of impeachment.
¶27. Even though the judge did not allow the statement, Ladd, nevertheless, questioned the doctors on matters that allowed the jury to question AS.’s chastity and credibility. He cross-examined both doctors about the presence of the victim’s hymen and about whether there was bacteria present in the victim’s vagina that could have come from prior sexual encounters. Therefore, even without specific testimony concerning her sexual history, the jury had the opportunity to judge A.S.’s credibility on that topic from each of these lines of questioning.
¶ 28. He also brought up other inconsistent testimony and managed to impeach her as to whether she originally told police that she tried to push Ladd off of her. In her testimony, A.S. said that she could not do anything because she was in shock. On cross-examination, however, she admitted she told Officer Carter that she tried to push Ladd off of her, and she said she did not remember whether she told Carter that she had told Ladd to stop. He also put on his ten-year-old daughter who said that the television in the living room where the alleged incident occurred had been turned down. This was contrary to A.S.’s testimony that the television volume remained turned up throughout the night.
¶ 29. We find that the judge was within his discretion when he refused to admit evidence of the victim’s prior sexual activity. This issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS TO BE SUSPENDED UPON COMPLETION OF FIFTEEN YEARS, AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. We will use initials for the victim and her family members to protect their identities.