CARLTON, J.,
 

 for the Court.
 

 ¶ 1. A Hinds County grand jury indicted Rodney Mendenhall, for aggravated assault with a weapon, armed robbery, and business burglary, all in connection with the July 6, 2006, shooting of Curtis T. Addison, Jr. A jury found Mendenhall guilty on all charges. The trial court sentenced Men-denhall to the custody of the Mississippi Department of Corrections (MDOC). After denial of post-trial motions, Menden-hall timely appeals. Upon review, we find that the trial court violated Mendenhall’s right of confrontation in prohibiting defense counsel from impeaching the credibility of the trial testimony of a material state witness as to a material fact in issue through cross-examination with a prior inconsistent statement. This limitation on the scope of Mendenhall’s cross-examination of the sole eyewitness unfairly compromised Mendenhall’s fundamental right to a fair trial. Therefore, we reverse Men-denhall’s conviction and sentence and remand this case for further proceedings consistent with this opinion.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the morning of July 5, 2006, Addison noticed that a pair of yellow, Suzuki motor scooters were missing from his business, Addison’s Body Shop, in Jackson, Mississippi. Addison called his friend, James Hampton, to see if Hampton had borrowed the scooters over the Fourth of July holiday. Hampton had not, but he promised Addison he would keep an “eye out” for the missing scooters. After speaking with Hampton, Addison called law enforcement and filed a report about the missing scooters.
 

 ¶ 3. Later that day, Hampton rode through the neighborhood, finding a man, whom he later identified as Mendenhall, riding one of the missing scooters. Hampton testified that he possessed a visible gun when he confronted Mendenhall, but he did not draw his gun on Mendenhall. Hampton obtained the scooter from Men-denhall, and Addison later retrieved the scooter from Hampton.
 

 ¶ 4. On the evening of July 6, 2006, Addison dozed off in front of the television at his business. Addison testified that he woke up around midnight with “a gun stuck in [his] face.” Addison said the intruder motioned with his gun for Addison to follow him from the television room into
 
 *917
 
 the hallway. Addison described the hallway as well-lit. Once in the hallway, the intruder told Addison to take his pants off.
 

 ¶ 5. Once Addison removed his pants, the intruder knocked Addison to the ground and fired twice, shooting Addison in the leg. Addison fled, and the man left the area through the heavy metal swinging shop doors. Addison then went into the office area of his shop where he attempted to call 911, but the assailant returned and shot Addison two more times. Addison testified that the two of them talked for about five minutes before the man shot him again. Addison again fled and hid in the shop’s kitchen.
 

 ¶ 6. Thinking the man had finally left, Addison again tried to call 911, but the man returned a third time, and threatened to kill Addison. The man shot Addison two more times, firing until the gun clicked on an empty chamber. At this point, Addison testified that he reached for his rifle, and the man ran out of the rear of the shop. Addison finally managed to call 911. Officers arrived and emergency personnel immediately transported Addison to the hospital.
 

 ¶ 7. After the hospital released Addison, he provided law enforcement with a description of his assailant. Addison described his attacker as “kind of a dark brown color,” between 5'10 and 5'11 in height, “kind of slim,” and between twenty and twenty-three years of age. Addison also stated that the intruder wore a scarf “halfway around his face”
 
 [1]
 
 and a baseball cap on his head.
 

 ¶ 8. Hampton also gave law enforcement a description of the man on the stolen scooter that he had recovered. Hampton described this man as six feet tall, slender, and “with a low haircut.” Detective Reginald Cooper, with the Jackson Police Department, testified at trial that at the time of the shooting, Mendenhall weighed 150 pounds, measured six feet in height, and was either twenty-two or twenty-three years of age. At trial, Addison identified Mendenhall as the man who had shot him multiple times, and Hampton identified Mendenhall as the man from whom he had obtained one of Addison’s stolen scooters.
 

 ¶ 9. Additionally, during the evening of July 8, 2006, two days after the shooting, Jackson Police Officer Ben Williams saw someone on Capitol Street in Jackson riding a yellow scooter that matched the description of Addison’s other stolen scooter. Officer Williams gave chase in his car. The rider, whom Officer Williams could not identify, lost control of the scooter, crashed, and fled on foot. Law enforcement subsequently recovered the scooter and tested it for fingerprints.
 

 ¶ 10. While law enforcement waited for the results of the fingerprints taken from the recovered scooter, they developed Mendenhall as the main suspect in Addison’s case. Law enforcement then put Mendenhall’s photograph in a photographic lineup consisting of six black males. On July 13, 2006, Detective Cooper took the photographic lineup to Hampton’s workplace where Hampton identified Menden-hall as the man from whom he had retrieved the scooter on July 5, 2006.
 

 ¶ 11. Later that same day, law enforcement showed Addison the same photographic lineup, and Addison identified Mendenhall as his assailant. Additionally, fingerprints from the scooter, which law enforcement had recovered two days after
 
 *918
 
 Addison’s assault, matched the fingerprints taken from Mendenhall.
 

 ¶ 12. A grand jury indicted Mendenhall, and he was tried by a jury on the charges of aggravated assault with a weapon, armed robbery, and business burglary, all in connection with the July 6, 2006, shooting of Addison. The jury found Menden-hall guilty on all charges. The trial court sentenced Mendenhall to the custody of the Mississippi Department of Corrections (MDOC) as follows: (1) twenty-five years for Count I, armed robbery; (2) twenty years for Count II, aggravated assault, to run consecutively to the sentence for Count I; and (3) seven years for Count III, business burglary, to run concurrently with the sentence for Count I.
 

 ¶ 13. Mendenhall appeals and alleges the following errors: (1) the trial court erred in refusing to allow Mendenhall to stand before the jury in closing argument in order to draw particular attention to the size of his nose; (2) the trial court erred in granting the State’s motion in limine that barred Mendenhall from impeaching Addison regarding medical records that indicated that Addison had consumed alcohol on the night his attacker shot him; and (3) the evidence at trial was legally insufficient to support his convictions. We find merit to the second and third assignments of error.
 

 DISCUSSION
 

 I. Presentation of Mendenhall’s Nose to the Jury During Closing Arguments
 

 ¶ 14. Mendenhall contends that the trial court denied him the opportunity to present a meaningful defense, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, by denying his request to stand before the jury in closing argument to exhibit his “large” nose. However, Mendenhall made this request after both parties rested and after the court closed the record for the reception of further evidence. Mendenhall made no application for the reopening of the record for the reception of further evidence. In turn, the State argues that “any error was harmless” regarding this issue because “counsel for defendant was clearly and demonstrably able to point out [Mendenhall’s] nose to the jury” in closing arguments. We note that the reopening of a case for the purpose of receiving further evidence is a matter addressed to the sound judicial discretion of the trial court.
 
 Perkins v. State,
 
 253 Miss. 652, 655, 178 So.2d 694, 695-96 (1965) (citation omitted).
 

 ¶ 15. At trial, Mendenhall raised the defense of misidentification and elected not to testify. The State argued that such an exhibition of Mendenhall’s nose constituted testimonial evidence and, therefore, fell within the ambit of the Confrontation Clause requirements as outlined in
 
 Crawford v. Washington,
 
 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The trial court agreed with the State and refused to permit Mendenhall to stand before the jury to display his nose close-up during closing arguments. However, we find that the proper analysis on this issue pivots not upon whether such an exhibition of Mendenhall’s nose constituted testimonial evidence. Instead, the central question is whether defense counsel sought to introduce new relevant evidence probative of a material fact of consequence through the exhibition of the defendant’s physical characteristics of his nose to the jury during closing arguments.
 
 See
 
 MRE 401(rel-evant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less proba
 
 *919
 
 ble than without the evidence).
 
 [2]
 

 ¶ 16. We find the supreme court case of
 
 Perkins
 
 on point with the issue before us. In
 
 Perkins,
 
 the jury was permitted to examine the defendant’s scars after the record was closed for the reception of further evidence and submitted to the jury.
 
 Perkins,
 
 253 Miss. at 655-56, 178 So.2d at 696. The supreme court found reversible error in such a display.
 
 Id.
 
 The court explained that ordinarily, the reopening of the case after submission to the jury and before the verdict for the purpose of receiving further evidence constituted a matter addressed to the sound judicial discretion of the trial court.
 
 Id.
 
 at 655, 178 So.2d at 695-96.
 

 ¶ 17. The
 
 Perkins
 
 court further explained that:
 

 This rule imports a requirement that a cogent reason be found to exist which demands reopening in order that justice may be done. Moreover, when a case is reopened for the reception of further evidence, it must be done in such a manner that the rights of all parties will be protected and ample opportunity afforded them for cross-examination or rebuttal, and even for requesting additional instructions, if the matters introduced should reasonably require them.
 

 Id.
 
 at 655, 178 So.2d at 696.
 

 ¶ 18. In light of
 
 Perkins,
 
 we find no merit to this assignment of error since Mendenhall failed to request to reopen the record for further evidence, and then for the first time requested to exhibit the physical characteristics of his nose to the jury during closing arguments after the record had closed for the receipt of further evidence.
 
 See State v. Candelaria,
 
 97 N.M. 64, 636 P.2d 883, 885 (Ct.App.1981).
 

 ¶ 19. We also note that defense counsel highlighted the defense of misidentification to the jury during closing arguments by drawing specific attention to Mendenhall’s nose and exhibited a photograph of Men-denhall to the jury from the photographic lineup display previously admitted into evidence. During the closing argument, defense counsel asserted the following:
 

 I want you to look at this photograph of [Mendenhall], and I want you to look at him now. Look at him closely. If he had a mask across the bottom of his face what would stand out in your mind[?] Look at that nose. It’s as big as Rudolph the red-nosed reindeer’s nose. Did Mr. Addison say anything about a nose[?] [N]ot one thing.
 

 ¶ 20. We find no merit to this first assignment of error and no prejudice to Mendenhall’s ability to present his defense of misidentification.
 

 II. Addison’s Medical Records
 

 ¶ 21. Mendenhall contends that the trial court fatally prejudiced his defense and abused its discretion in granting the State’s motion in limine to bar impeachment of Addison with medical records allegedly showing that Addison admitted to his treating physician that he consumed alcohol on the night of the shooting. However, Mendenhall has awkwardly framed this assignment of error. We find that the error lies in the trial court’s prohibition on the defendant’s ability to fully cross-examine and impeach, via prior inconsistent statements, the trial testimony of the sole eyewitness.
 

 ¶ 22. Mendenhall argues that Addison’s statements to his treating physician fell within the exception to hearsay found in Mississippi Rule of Evidence 803(4);
 
 *920
 
 therefore, these statements constituted admissible evidence. Mendenhall also contends that the trial court committed rer versible error in denying him the right to fully cross-examine Addison with his prior inconsistent statement to the emergency-room doctor regarding Addison’s alcohol consumption on the night of the shooting. The statement went to Addison’s credibility as to his ability to perceive and identify the perpetrator of the crimes charged.
 

 ¶ 23. In turn, the State argues that Addison’s medical records do not fall within any hearsay exception due to Men-denhall’s inability to authenticate such rec-oi'ds. As a result, the State contends that the trial court properly ruled that defense counsel could not use the medical records to impeach Addison. However, impeachment of the trial testimony of a witness is not limited by what constitutes admissible evidence.
 
 See
 
 M.R.E. 613 (In examining a witness concerning a prior inconsistent statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time). Rather, counsel must possess a good-faith basis to inquire as to a matter on cross-examination for impeachment purposes.
 
 Flowers v. State,
 
 842 So.2d 531, 551-52(55) (Miss.2003) (citations omitted).
 

 ¶ 24. During the hearing, defense counsel conceded that the medical records required authentication before admission into evidence, and the defense failed to provide such an authenticating witness. However, defense counsel argued that wide latitude should be granted during cross-examination to ask Addison whether or not he told the doctor he consumed alcohol on the night of the shooting. Defense counsel stated Addison “[was] the horse’s mouth in this case” and that “there would be no need to bring in the doctor to testify to what Mr. Addison said.” In response, the State contended that defense counsel “[was] trying to impeach [Addison] on a prior inconsistent statement without the person who heard the prior inconsistent statement.”
 

 ¶ 25. After hearing the arguments of both parties, the trial court stated the following in making its ruling on the motion:
 

 Well, the way the Court views this is just the fact that he was, quote, drinking is not enough. It has to be you were intoxicated, was he intoxicated.... Just because somebody had a beer or whiskey ... that doesn’t mean anything as far as this is concerned. So I think the danger here is [Mississippi Rule of Evidence] 403. Even if it is relevant, which the Court doesn’t know at this point[,] I think there [is] a danger this 403 would be unfairly prejudicial to the victim and the State in this instance.
 

 The trial court then granted defense counsel permission to ask Addison whether he consumed alcohol on the night of the shooting, but it prohibited defense counsel from engaging in a full cross-examination as to whether Addison made a prior statement to the doctor the night of the shooting inconsistent with his trial testimony.
 
 See
 
 M.R.E. 613 (examination of a witness concerning a prior statement).
 

 ¶ 26. Note, defense counsel in this case did not seek admission of the medical record into evidence. Therefore, the critical analysis in this case is whether a good-faith basis existed for the cross-examination inquiry and whether the impeachment of the credibility of Addison’s trial testimony prejudiced Mendenhall’s ability to receive a fair trial. We need not analyze the foundational requirements for admitting medical records under a hearsay exception since the basis of error does not pertain to the introduction of the record into evidence.
 

 
 *921
 
 ¶ 27. The limitation of the defendant’s ability to confront his accuser with a full cross-examination is the basis of error. The analysis to determine whether an inquiry constitutes proper cross-examination regarding a prior inconsistent statement differs from laying the foundational requirements to admit a medical record. To engage in impeachment of trial testimony through a prior inconsistent statement, counsel must possess a good-faith basis for any question asked on cross-examination and the requirements of Rule 613 must be met.
 
 Flowers,
 
 842 So.2d at 551-52(¶ 55). In
 
 Flowers,
 
 the supreme court stated the following in explaining the policy behind the good-faith basis requirement:
 

 The asking of questions without a factual basis leaves an impression in the mind of jurors that the prosecutor actually had such facts in hand and that the insinuations through questioning contained some truth. This leaves false and inadmissible ideas in the minds of jurors that cannot be adequately rebutted by the testimony of witnesses or instructions from the court.
 

 Id.
 
 at 552(¶ 55) (citation omitted).
 

 ¶ 28. In the case at bar, the State provided Addison’s medical records to the defense prior to trial. The medical records contained a notation that Addison stated that he had consumed alcohol on the night of the shooting. Thus, inquiring of Addison on cross-examination as to prior inconsistent statements provided to the defense in discovery by the State would not lend itself to “false and inadmissible ideas in the minds of jurors.”
 
 See id.
 

 ¶ 29. Moreover, our governing case law affords defense counsel wide latitude in cross-examination.
 
 Nalls v. State,
 
 651 So.2d 1074, 1076 (Miss.1995) (citation omitted). “[T]he right of confrontation and cross-examination extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would bear on the credibility of the witness and the weight and worth of his testimony.”
 
 Id.
 
 (citations omitted).
 

 ¶ 30. The credibility of Addison’s trial testimony as to the identity of the perpetrator bore directly on the truthfulness of his testimony regarding a material fact in issue, and not a collateral matter.
 
 See id.; see also Evans v. State,
 
 382 So.2d 1084, 1085 (Miss.1980) (stating that State has the duty to prove “beyond a reasonable doubt the identity of the defendant as the one guilty of the offense charged”). The trial court analyzed this impeachment as if it were a collateral matter addressing the content of substantive evidence. The court found that evidence of mere drinking, without sufficient proof of intoxication, was so prejudicial as to outweigh its probative value, rendering the evidence inadmissible under Rule 403. This analysis incorrectly evaluated a prior inconsistent statement for the truth of the matter it asserted rather than evaluating the probative value of a prior inconsistent statement used to impeach the credibility of the accuser. M.R.E. 613. The prior inconsistent statement at issue was highly probative of the credibility of Addison’s testimony identifying the perpetrator of the crimes charged. We find the trial judge abused his discretion in limiting Mendenhall’s right to confront Addison, the sole eyewitness in this case, and impeach his credibility during cross-examination using his prior inconsistent statement. We find merit to this assignment of error.
 

 III. Legal Sufficiency of the Evidence
 

 ¶ 31. Mendenhall contends that the State failed to meet its burden of proof in this case as it possessed the duty to prove “beyond a reasonable doubt the identity of
 
 *922
 
 the defendant as the one guilty of the offense charged.”
 
 Evans,
 
 382 So.2d at 1085. The State counters that legally sufficient evidence supported Mendenhall’s conviction.
 

 ¶ 32. This Court has articulated the following general standard of review in challenges to the legal sufficiency of the evidence:
 

 [ I]n reviewing whether the evidence supporting a jury verdict is legally sufficient, this Court does not ask whether from the evidence we would have voted to convict or acquit. Rather, we inquire whether, viewing the evidence in the light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied. The proper remedy for insufficient evidence is for the Court to reverse and render.
 

 Cooper v. State,
 
 977 So.2d 1220, 1224(¶ 16) (Miss.Ct.App.2007) (citing
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005)). Underlying this standard of review is the presumption that the jury “resolved questions regarding the weight and credibility of the evidence.”
 
 Dear v. State,
 
 960 So.2d 542, 546 (¶ 13) (Miss.Ct.App.2006) (citing
 
 Pratt v. State,
 
 870 So.2d 1241 (Miss.Ct.App.2004)).
 

 ¶ 33. However, when involving the violation of a basic constitutional right, the supreme court set forth the test for determining whether the error is harmless by ascertaining whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.
 
 Brown v. State,
 
 995 So.2d 698, 704(¶ 25) (Miss.2008). Applying this analysis to this case, we note that the constitutional error herein strikes at the heart of a material fact in issue — the limitation of the defendant’s right to confront his accuser and test the credibility of the trial testimony of the sole eyewitness identifying him as the perpetrator of crimes charged.
 

 ¶ 34. Given the importance of Addison as the State’s sole eyewitness and the importance of impeaching Addison to Men-denhall’s theory of misidentifieation, the error in limiting cross-examination colors the analysis of the evidence’s sufficiency. In prohibiting cross-examination regarding the prior inconsistent statement, the trial court limited Mendenhall’s ability to present relevant evidence regarding Addison’s truthfulness for the jury to consider in evaluating the weight and credibility of the evidence. Identifying the perpetrator is an essential element in proving the crime. The jury was denied the ability to properly resolve the weight and credibility of the testimony of the only witness capable of identifying the perpetrator.
 
 See Nalls,
 
 651 So.2d at 1076. Therefore, the record fails to reflect beyond a reasonable doubt that the error complained of did not contribute to the verdict. In sum, the trial court violated Mendenhall’s right of confrontation by prohibiting Mendenhall’s impeachment of the credibility of the sole eyewitness, Addison, with a prior inconsistent oral statement made by Addison. We find merit to this assignment of error. Therefore, we must reverse Mendenhall’s conviction and remand for a new trial.
 

 ¶ 35. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. MYERS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . We note that during direct examination by the State, Addison contradicted this earlier statement to law enforcement when he testified that the intruder “had a scarf on” and that the scarf rested “right up under his nose and covered [the man’s face] from the lips down.”
 

 [2]
 

 .
 
 See, e.g., Williams v. State,
 
 991 So.2d 593, 599(18) (Miss.2008) (stating that the display of a physical characteristic lies outside the protection of the Fifth Amendment and its exhibition does not waive a defendant’s rights against self-incrimination).