# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-01274-SCT

*STEPHAN HICKMAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/2010 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| | LESLIE S. LEE |
| | AAFRAM YAPHET SELLERS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/03/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1. After a mistrial, Stephan Hickman was retried and found guilty of capital murder with the underlying felony of robbery. The Circuit Court of Hinds County, First Judicial District, sentenced Hickman to life without parole in the custody of the Mississippi Department of Corrections. Hickman appeals, arguing that the trial court erroneously restricted his right to

cross-examine a witness in violation of his right to confrontation, and that the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

¶2. On September 6, 2007, the body of an elderly man, Jesse Reed, was discovered in a rural area in Hinds County. Reed had died from a gunshot wound to the head. After Reed's neighbor, Hickman, was seen driving Reed's car, he was arrested for receiving stolen property. While in jail, Hickman confessed to Earl Terrell that he had robbed and killed Reed. Hickman was charged with capital murder.

¶3. At Hickman's trial, Alexis Walls testified that she lived close to Reed and Hickman, and had been friends with Hickman. Walls testified that, on the first or second day of September 2007, she had been sitting on her porch talking to Hickman. He had asked her which of two elderly male neighbors had more money, and she responded that it was Reed. Hickman had told her he was going to rob Reed. Walls then saw Hickman go to Reed's house and look around. Walls testified that Reed drove a Chrysler 300 vehicle. Later in the week, she saw a car that looked like Reed's parked in Hickman's yard. Walls also testified that Hickman had related several conflicting stories about how he had acquired the car. Walls and several other witnesses testified that they had never seen Hickman in possession of a car before seeing him with the Chrysler.

¶4. DeMarcus Brown testified that he lived in the same neighborhood as Walls, Hickman, and Reed. On September 2, 2007, Brown brought a gun that he had found in his grandmother's house to Deontay Franklin's house. While Franklin was taking a bath, Hickman came over, saw the gun, and demanded that Brown give it to him. Brown testified

2

that he heard Hickman say he was going to "hit a lick," which Brown defined as stealing something from someone or getting money from someone. When Brown refused to give Hickman the gun, Hickman took it against Brown's wishes. The next day, Brown saw a Chrysler 300 in Hickman's yard. A couple of days later, Hickman returned the gun to Brown and instructed him to give it away. When Hickman returned the gun to Brown, the bullets that previously had been in the box with the gun were missing. Brown sold the gun to Michael Harelson, who testified that he threw the gun away after hearing it was "hot."

¶5.    Franklin testified that Hickman came to his house on September 2, 2007, and asked for a gun to hit a lick. Franklin did not give Hickman a gun, and Hickman left. Franklin assumed Hickman planned to rob someone. Franklin testified that Brown came over later that day to show him a gun he had found. Franklin did not see Hickman again that day. But on September 4, 2007, Hickman came over, asked for a ride to the store, and said he had to hit a lick. The next day, Hickman came to Franklin's house driving a Chrysler 300. Hickman stated "I told you I was going to hit a lick." Hickman then drove off in the car.

¶6.    Franklin also testified that, later in the week, a group had gathered at his house to watch a football game, and Hickman stopped by. After the game, Reed's death was reported on the news. Hickman told the group that he had not killed Reed, asked what channel the news report was on, and abruptly left.

¶7.    Walls's twin brother Alex Walls also testified. Alex testified that Hickman had shown him a Chrysler he had acquired. Hickman told Alex he had purchased the car with his girlfriend's student loan funds, but later he said had exchanged drugs for the car. Hickman drove Alex to a carwash, where they removed items from the Chrysler and threw them into

3

a garbage can and onto an adjacent field. Then they drove to the home of someone named Marqus, and Hickman asked him to keep the car. Hickman told Marqus he could drive it anywhere but the neighborhood where Hickman lived. Marqus refused. Then Hickman drove to Stravoss Manning's house. Hickman asked Manning to keep the car. He told Manning he could drive the car anywhere but the area where Hickman lived. Manning refused. Alex said that the car subsequently disappeared, and Hickman said he had traded it for another car, but he never saw Hickman with another car. Officer James Roberts testified that he had found the Chrysler at an apartment complex near Hickman's house.

¶8. On September 6, 2007, Marsha Temple, an employee of Stirling Properties, was inspecting a Trustmark bank when she discovered Reed's credit card lying on the ground. The bank's surveillance video had captured Hickman using Reed's credit card at 10:12 p.m. on September 5, 2007. The bank's records revealed that Hickman had tried to withdraw funds twice, but each time he was unable to retrieve money because the PIN number he entered was incorrect.

¶9. Earl Terrell testified that, on September 5, 2007, he saw Hickman with a Chrysler 300. He and Hickman drove the car to a Trustmark ATM machine. On the way, he found a wallet in the car and showed Hickman. Hickman removed the credit cards from the wallet and threw it out the window. When Hickman was unable to remove any money from the Trustmark ATM machine, they drove to two other ATM locations, but Hickman was unsuccessful each time. After Hickman and Terrell were seen driving Reed's Chrysler, they were arrested for receiving stolen property. Terrell testified that, while they were in the same jail cell, Hickman confessed that he had shot Reed in the head. Officer Roberts testified that

4

he had interviewed several witnesses who established that Terrell had an alibi on September 4, 2007, the day before Hickman was first seen with Reed's car.

¶10. The jury found Hickman guilty of capital murder with the underlying felony of robbery.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRONEOUSLY RESTRICTED CROSS-EXAMINATION IN VIOLATION OF HICKMAN'S CONFRONTATION RIGHTS.

¶11. Hickman was tried twice. In Hickman's first trial, Walls had testified on redirect examination that she had spoken with Hickman while she was sitting on her porch "waiting on some marijuana." The trial resulted in a hung jury, and the court declared a mistrial. Before the second trial, the State entered a motion in limine to exclude the testimony. Specifically, the State requested that "the defense be prohibited from asking any questions or making any statements in the presence of the jury regarding who state witness, Alexis Walls, was waiting on when she had her conversation with the defendant regarding Mr. Jesse Reed."

¶12. The trial court heard arguments on the motion. The State argued that the reason Walls had been sitting on her porch was irrelevant and more prejudicial than probative, because there had been no testimony that, at the time Walls spoke with Hickman, she had been using marijuana or had been under its influence. Hickman argued that the testimony was admissible, because it tended to show she was a credible witness as she was able to recall what she had been doing when she had spoken to Hickman. Hickman also argued it was relevant because it showed how she was able to remember what she had been doing. The

5

State responded that, because Walls had not mentioned the planned marijuana delivery until redirect examination, Walls obviously had not relied on her memory of the planned marijuana delivery to refresh her memory. The trial court granted the motion upon a finding that the testimony was irrelevant and inadmissible under Mississippi Rules of Evidence 401, 402, 403, and 608(b).

¶13. Hickman argues that the ruling was incorrect under the Mississippi Rules of Evidence, and it erroneously restricted his right his right of confrontation under the Sixth Amendment to the United States Constitution. The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI (emphasis added). *See also Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. E. 2d 177, 192 (2004) (the Confrontation Clause applies to "witnesses" against the accused, in other words, those who "bear testimony.") (citations omitted).

¶14. As long as the trial court remains within the boundaries of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference. *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990). But "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected." M.R.E. 103(a). The trial court has the inherent power to limit cross-examination to relevant matters. *Foley v. State*, 914 So. 2d 677, 691 (Miss. 2005).

¶15. The trial court held that Walls's testimony that she was waiting on marijuana was irrelevant under Rule 401 and inadmissible under Rule 402. Under Rule 401, relevant evidence is evidence having any tendency to make the existence of any fact that is of

6

consequence to the determination of the action more or less probable than it would be without the evidence. M.R.E. 401. Under Rule 402, irrelevant evidence is not admissible. The trial court also held that the testimony was inadmissible under Rule 403, which states that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. M.R.E. 403. The trial court further held that the testimony was inadmissible under Rule 608(b) because it was not probative of Walls's character for truthfulness or untruthfulness. Rule 608(b) states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

¶16. Hickman argues that Walls's testimony that she was waiting on marijuana was relevant to show her character for truthfulness or untruthfulness. This Court has held that, under Rule 608(b), a specific instance of conduct not resulting in a conviction may be inquired into on cross-examination if it reflects on the witness's character for truthfulness. *Brent v. State*, 632 So. 2d 936, 943 (Miss. 1994). But "[i]f the past conduct did not involve lying, deceit, or dishonesty in some manner, it cannot be inquired into on cross-examination." *Id.*

7

¶17. In ***Johnston v. State***, 618 So. 2d 90, 94 (Miss. 1993), this Court held that a witness's prior marijuana use had no bearing on her character for truthfulness under Rule 608(b) and was irrelevant. But in ***Havard v. State***, 800 So. 2d 1193, 1199 (Miss. Ct. App. 2001), the Court of Appeals held that the trial court had properly permitted cross-examination of a witness about his marijuana use on the day of the crime because it was relevant to his memory and powers of observation. And in ***Smith v. State***, 733 So. 2d 793, 801 (Miss. 1999), cited by Hickman, this Court held that cross-examination concerning the witness's drug problems was probative of a witness's credibility, because the witness had "been a mental patient, abused alcohol, drugs, sniffs gas and freon, that he was suicidal, that he was afraid of being in jail, has an explosive, violent temper, and had attempted to kill members of his immediate family." ***Smith***, 733 So. 2d at 801.

¶18. We hold that the trial court was within its discretion in finding that Walls's testimony that she was "waiting on some marijuana" when she spoke with Hickman had no bearing on her truthfulness. The fact that Walls expected to receive a delivery of marijuana does not involve lying, deceit, or dishonesty. Unlike in ***Smith***, there was no evidence that Walls had a significant past history of mental problems and drug use that could have impacted her credibility. Unlike in ***Havard***, there was no evidence that Walls had been under the influence of marijuana at the time she spoke with Hickman such that her memory or powers of observation were impaired. We find that the exclusion of the testimony was within the trial court's discretion, and Hickman's right to confrontation was not violated.

## II. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶19. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Bush v. State***, 895 So. 2d 836, 844 (Miss. 2005). The evidence is weighed in the light most favorable to the verdict. ***Id***. On appellate review of a challenge to the weight of the evidence, this Court sits as the thirteenth juror; a new trial should be granted only in exceptional cases when the evidence preponderates heavily against the verdict. ***Id.*** (quoting ***Amiker v. Drugs For Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000)).

¶20. Hickman argues that no physical evidence tied him to Reed's death, that Terrell's testimony was incredible, and that the rest of the State's evidence was merely speculative. Hickman argues that, without Terrell's testimony about Hickman's jail-cell confession, the State presented no evidence. He cites the rule that an accomplice's testimony is insufficient to sustain a conviction if the testimony is unreasonable, self-contradictory, or substantially impeached. ***Williams v. State***, 32 So. 2d 486, 490 (Miss. 2010)

¶21. "A limited amount of physical evidence, in itself, does not mean that a guilty verdict was against the weight of the evidence." ***Blanchard v. State***, 55 So. 3d 1074, 1079 (Miss. 2011). Even without Terrell's testimony, the State presented evidence that strongly implicated Hickman as Reed's killer. A few days before Reed was found dead, Hickman asked Walls if Reed had money and then told Walls he was going to rob Reed. Hickman told Brown that he was going to "hit a lick," and then stole Brown's gun. Hickman also told Franklin he was going to "hit a lick" and, the next day, Hickman was in possession of Reed's car. He was caught on surveillance video attempting to use Reed's credit card. A few days

9

after Hickman told the three witnesses that he was going to "hit a lick," he returned the gun to Brown with instructions to give it away. Hickman also tried to find someone who lived outside his neighborhood to store Reed's car. When this evidence is viewed along with Hickman's confession to Terrell, and viewing the evidence in the light most favorable to the verdict, the evidence did not preponderate so heavily against Hickman's guilt that a new trial is required.

## CONCLUSION

¶22. Because Hickman's right of confrontation was not violated when the trial court limited his cross-examination of Walls, and the verdict was not against the overwhelming weight of the evidence, we affirm.

¶23. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, KITCHENS, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., AND LAMAR, J., CONCUR IN PART AND IN RESULT.**

10