# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-00813-SCT

*JEREMY CAGE a/k/a "JAY" a/k/a JEREMY LAMAR CAGE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2013 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| TRIAL COURT ATTORNEYS: | AKILLE MALONE-OLIVER |
| | SCOTT ROGILLIO |
| | TINA HERRIN |
| | LATRICE WESTBROOKS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHOKWE ANTAR LUMUMBA |
| | CHOKWE LUMUMBA |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:   SCOTT STUART |
| |         JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/30/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.   Jeremy Cage appeals his conviction in the Holmes County Circuit Court for statutory rape, arguing that the trial court erred in excluding certain evidence and in denying his motion for a new trial.  Cage also claims that he was denied effective assistance of counsel. Finding no reversible error, we affirm Cage's conviction and sentence.

## FACTS

¶2.     At around 9:30 p.m. on August 26, 2010, thirteen-year-old A.S.[1,2] walked outside her house in Mileston, Mississippi, to feed her dogs. While she was feeding the dogs, a man grabbed her from behind and dragged her into a field adjacent to her house. The man pushed her to the ground, pulled her pants down, and began having sexual intercourse with her. A.S. could not identify the man at first because her eyes had not yet adjusted to the dark, but she was eventually able to identify him as her cousin Jeremy "Jay" Cage. She also recognized Cage by his voice. Shortly thereafter, A.S.'s brother walked outside and called for her, and Cage ran away. A.S. went back to her house and told her brother that she had been raped, but asked him not to tell anyone.

¶3.     The next day at school, A.S. told her friend K.J. that she did not feel well. K.J. told Tamika Clark Garnett, one of A.S.'s teachers, that she thought something was wrong with A.S. When questioned by Garnett, A.S. revealed that she had been raped. Garnett sent A.S. to talk to Shinar Riley, the school's guidance counselor. Riley called A.S.'s mother, Angel Bowman Spann, who picked A.S. up from school and took her to the police station in Lexington. A.S. told the police that she was feeding the dogs outside her house when Cage grabbed her from behind, dragged her into a field near the house, and raped her. A.S. then went to the hospital, where doctors performed a rape-kit examination on her.

---

[1] We refer to the minor victim and other minor witnesses by their initials to protect their identities.

[2] A.S.'s birth date is September 20, 1996.

¶4.    The Holmes County Sheriff's Department obtained an arrest warrant for Jeremy Cage and an order to retrieve a DNA sample from him upon his arrest. Cage's mother Melissa Cage York brought him to the police station on August 31, 2010. Cage was twenty-one years old at the time of his arrest.[3]  Melissa told Captain Sam Chambers with the Holmes County Sheriff's Department that she had last seen Cage on her front porch at around 8:00 p.m. on the night in question.

¶5.    Upon his arrest, the police performed a buccal swab on Cage and sent the swab to the Mississippi Crime Lab in Jackson for testing. The Crime Lab compared DNA from Cage's buccal swabs and DNA from a blood sample taken from A.S. to the DNA retrieved from the vaginal swab in A.S.'s rape kit. The DNA testing indicated that Cage could not be excluded as a contributor to the mixture of DNA retrieved from the vaginal swab, and the results of the test excluded more than ninety-nine percent of the population. There was no indication of any other contributing DNA, other than that of A.S. herself.

## PROCEDURAL HISTORY

¶6.    On April 29, 2011, a Holmes County grand jury indicted Cage with one count of statutory rape in violation of Section 97-3-65(1)(b)[4] of the Mississippi Code. Cage's trial commenced on February 11, 2013. Cage was represented at trial by Attorney Latrice

---

[3] Cage's birth date is March 31, 1989.

[4] "(1) The crime of statutory rape is committed when: . . . (b) A person of any age has sexual intercourse with a child who: (i) Is under the age of fourteen (14) years; (ii) Is twenty-four (24) or more months younger than the person; and (iii) Is not the person's spouse." Miss. Code Ann. § 97-3-65(1)(b) (Rev. 2014).

Westbrooks. On February 12, 2013, Angel, A.S.'s mother, appeared in court with attorney Imhotep Alkebu-lan and filed an affidavit stating the following:

> My daughter wishes and it is in my daughter's best interest that the charges pending in cause No. 11-0029, in the Circuit Court of Holmes County, Mississippi, styled State of Mississippi vs. Jeremy Cage, be dismissed . . . . Me and my family have forgiven Jeremy. We do not want to see him go to prison for the rest of his life . . . . If we are called to testify in this matter we will so testify.

Alkebu-lan informed the court that he was representing Angel's interests because she felt pressured by the prosecutors. In response, the prosecutors stated that this was the first time they had been informed of Angel's unwillingness to participate in the case. The prosecutor also stated that Melissa, Cage's mother, had visited Angel at her house the night before trial began, implying that it was the defense who had put pressure on Angel. The trial court called Angel to the witness stand and questioned her about these events. Angel testified that Melissa had contacted Alkebu-lan for her, and that she had spoken to him about the case, but she did not hire him. Angel stated that the prosecution of Cage had been hard on her family, as they were related, and she seemed to be under the impression that she had the authority to have the charges against Cage dismissed. The trial court explained to Angel and the attorneys that Cage's prosecution rested in the State's discretion. After considering Angel's testimony, the trial court appointed a guardian ad litem to represent A.S.'s interests during the prosecution. The trial court also allowed the prosecution and the defense to speak with Angel to determine if she had altered her testimony since speaking with Alkebu-lan.

¶7. At trial, during the defense's cross-examination of Angel, Cage's attorney attempted to question her about the affidavit, asking her whether she had requested that the charges

4

against Cage be dropped. The State objected to the relevance of this question, and the defense attorney attempted to withdraw the question. After hearing arguments from the parties, the trial court sustained the State's objection, finding that the affidavit was not relevant to the issues in the case. The affidavit was never offered into evidence.

¶8. Cage attempted to present an alibi defense at trial. Melissa testified that Cage was sitting on the front porch of her house[5] smoking marijuana with Henry McClaurin at 9:00 p.m. on August 26, 2010, about thirty minutes before the time A.S. alleged she was raped. Melissa was inside her house watching "General Hospital" at the time. Sometime around 10:00 p.m., Melissa went to bed, and she did not see Cage again for the rest of the night. Melissa testified that she heard a car start up and assumed Cage and McClaurin had left the house, although she could not state when this occurred. On cross-examination it was revealed that, in her statement to Captain Chambers, Melissa had stated that she had last seen Cage closer to 8:00 p.m on the night in question. Melissa stated that Captain Chambers must have written the time down wrong.

¶9. Cage also called K.J. to testify. The prosecutors informed the judge that they had not expected K.J. to testify and did not know what the substance of her testimony would be. The trial court allowed the State and the defense to interview K.J. before she testified. The State then informed the trial court that K.J. was going to testify regarding A.S.'s prior sexual relationships. The State objected to this potential testimony under Mississippi Rule of Evidence 412, also known as the rape-shield law. To limit the possibility of prejudicial inadmissible evidence being revealed to the jury, the court allowed K.J. to proffer her

___

[5]Melissa and Cage lived on the same road as A.S. and her family.

testimony outside the presence of the jury. K.J. stated that, two days before reporting the rape, A.S. had told her that she thought she might be pregnant. K.J. relayed this information to Riley. Then, a week later, A.S. told K.J. she had lied about the rape because she did not want to tell her mother that she might be pregnant. K.J. stated that she did not believe A.S. when she said she had been raped because she knew A.S. to be a liar and "full of drama." The trial court prohibited K.J. from testifying regarding specific instances of A.S.'s prior sexual behavior. The court did allow her to testify about A.S.'s statements to her about the rape, but restricted her from calling A.S. a liar without specific supporting evidence.

¶10. After the conclusion of the defense's case-in-chief, the State recalled Riley and Captain Chambers as rebuttal witnesses. Riley testified that she had never had a conversation with K.J. about the possibility of A.S. being pregnant. She stated that she would have been required to tell A.S.'s mother if such a report had been made. Captain Chambers testified that Melissa had told him that she had last seen Cage at around "eight or eight something" on the night in question and had never mentioned 9:00 p.m. as a possible time frame. An audio recording of Melissa's statement to Captain Chambers was played for the jury, and it corroborated Captain Chambers's testimony.

¶11. At the conclusion of the trial, the jury returned a verdict finding Cage guilty of statutory rape. At the sentencing hearing, Cage gave a statement in which he admitted to the rape and asked the judge for leniency in sentencing. The trial court sentenced Cage to twenty years in the custody of the Mississippi Department of Corrections. Cage subsequently filed a motion for Judgment Notwithstanding the Verdict (JNOV), or alternatively, a New Trial,

which the trial court denied.  Cage, now represented by Attorney Chokwe Antar Lumumba, appeals to this Court, raising the followings issues:

**I.     Whether the trial court improperly limited the defense's cross-examination of Angel Spann.**

**II.    Whether the trial court erred in excluding the testimony of K.J.**

**III.   Whether Cage received ineffective assistance of counsel.**

**IV.    Whether the trial court erred in denying Cage's motion for a new trial based on newly discovered juror misconduct.**

### DISCUSSION

**I.     Whether the trial court improperly limited the defense's cross-examination of Angel Spann.**

¶12.    The trial court prohibited Cage from asking Angel about her sworn affidavit in which she expressed a desire to have the charges against Cage dropped, finding that Angel's wishes were not relevant to the issue of Cage's guilt and had no effect on the State's ability to proceed with the prosecution.  On appeal, Cage claims that the trial court's exclusion of this testimony prohibited the jury from accurately considering Angel's possible interest, bias, or prejudice in the outcome of the case.

¶13.    "Limitations placed on cross-examination are reviewed for abuse of discretion." *Jefferson v. State*, 818 So. 2d 1099, 1109 (Miss. 2002).  "As long as the trial court remains within the boundaries of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference." *Hickman v. State*, 73 So. 3d 1156, 1160 (Miss. 2011) (citing *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990)).  An abuse

7

of discretion will be found only where the defendant shows clear prejudice resulting from undue restraint on the defense. ***Davis v. State***, 684 So. 2d 643, 652 (Miss. 1996).

¶14.    Mississippi Rule of Evidence 611(b) "allows wide-open cross-examination so long as the matter probed is relevant." ***Johnston v. State***, 618 So. 2d 90, 93 (Miss. 1993); Miss. R. Evid. 611(b). However, the trial court has the authority to control the mode of interrogating witnesses so as to "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Miss. R. Evid. 611(a).  Proper subjects of cross-examination may include a witness's possible "bias, prejudice, or interest . . . for or against any party to the case[.]"  Miss. R. Evid. 616. *See also **Meeks v. State***, 604 So. 2d 748, 755 (Miss. 1992) (citations omitted).   The general rule of admissibility of evidence under Rule 616 is subject to the trial court's discretionary finding that the evidence is relevant to the specific facts of the case. ***Tillis v. State***, 661 So. 2d 1139, 1142 (Miss. 1995).  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Miss. R. Evid. 401.

¶15.    We find that the trial court did not err in excluding evidence of Angel's affidavit, as the statements in the affidavit have no relevance to the determination of the issues in the instant case.  First, the statements in Angel's affidavit had no tendency to make any of the facts constituting the offense charged more or less probable. *See* Miss. R. Evid. 401. If the State had probable cause to believe that Cage had committed statutory rape by having sexual intercourse with A.S., the decision of whether to prosecute Cage rested entirely in the State's

8

discretion. *See* ***Bordenkircher v. Hayes***, 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). The fact that Angel's family had forgiven Cage and wanted the charges against him dropped does not make Cage's guilt in the instant case more or less probable.

¶16. In addition, Angel's affidavit was not relevant to show her bias, prejudice, or interest in the case. "Rule 616 must be interpreted as it relates to other rules of evidence, particularly M.R.E. 104, 401 and 402." ***Tillis v. State***, 661 So. 2d 1139, 1142 (Miss. 1995). Thus, before evidence of bias, prejudice, or interest can be admitted under Rule 616, "[i]t must have the tendency, in the case being tried, to make the facts to which the witness testified less probable than it would be without the evidence of bias." ***Id.*** The statements in Angel's affidavit have no tendency to make the facts to which she testified at trial less probable, as her affidavit does not support Cage's argument that she had an interest in the outcome of the case. Cage argues that Angel cooperated with the prosecutors only because she feared her children would be taken from her, but he offers no evidence to support this allegation. There is no evidence that Angel or A.S. ever attempted to retract their initial statements to the police. The statements in Angel's affidavit do not contradict her trial testimony or the testimony of any of the other witnesses; on the contrary, Angel's statement that she had forgiven Cage implies that she still believed he was the perpetrator of the rape at the time of trial. Accordingly, we find that the trial court did not abuse its discretion in limiting the defense's cross-examination of Angel. This argument is without merit.

**II.      Whether the trial court erred in excluding the testimony of K.J.**

¶17. The trial court allowed K.J. to testify regarding A.S.'s statements that she had lied about the rape because she thought she was pregnant. However, the trial court prohibited

9

K.J. from testifying regarding specific instances of A.S.'s past sexual behavior. On appeal, Cage argues that the trial court erred in excluding this testimony because it would have called into question A.S.'s credibility as a witness. Cage also argues that K.J.'s testimony would have provided evidence of an alternate source of the DNA retrieved from A.S.'s rape kit. Again, the exclusion of evidence is reviewed for an abuse of discretion. *Williams v. State*, 54 So. 3d 212, 213 (Miss. 2011).

¶18.    The trial court excluded K.J.'s testimony pursuant to Mississippi Rule of Evidence 412. "[Rule] 412 is designed to prevent the introduction of irrelevant evidence of the victim's past sexual behavior to confuse and inflame the jury into trying the victim rather than the defendant." *Hughes v. State*, 735 So. 2d 238, 273 (Miss. 1999). Rule 412 provides that, in a sexual-offense case, the past sexual behavior of the alleged victim generally is not admissible. *See* Miss. R. Evid. 412(a), (b). However, evidence of the victim's past sexual behavior, other than opinion or reputation evidence, may be admissible if "offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of the semen, pregnancy, disease, or injury[.]" Miss. R. Evid. 412(b)(2)(A). The party intending to offer evidence of specific instances of the victim's past sexual behavior under Rule 412(b) "*shall* make a written motion to offer such evidence no later than fifteen days" prior to the trial date. Miss. R. Evid. 412(c)(1) (emphasis added). This motion must be accompanied by a written offer of proof. Miss. R. Evid. 412(c)(2). The trial court has the discretion to allow such motion to be made at a later date, including during trial, if it concludes "either that the evidence is newly discovered and could not have been

obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case." Miss. R. Evid. 412(c)(1).

¶19. Cage complains that K.J.'s proffered testimony was admissible under Rule 412(b)(2)(A) as evidence of an alternate source of the DNA retrieved from A.S.'s rape kit. But Cage failed to file a motion and accompanying offer of proof concerning this evidence within the time limit specified in Rule 412(c). And it does not appear that this evidence was newly discovered and could not have been obtained earlier through the exercise of due diligence. *See* Miss. R. Evid. 412(c)(1). Because Cage failed to timely comply with the requirements of Rule 412(c), the trial court did not err in prohibiting K.J. from testifying about A.S.'s past sexual behavior. *See Aguilar v. State*, 955 So. 2d 386, 393 (Miss. Ct. App. 2006); *Levy v. State*, 724 So. 2d 405, 409 (Miss. Ct. App. 1999). This issue is without merit.

### III. Whether Cage received ineffective assistance of counsel.

¶20. Cage argues that he received ineffective assistance of counsel because his trial attorney failed to secure a serologist or DNA analyst to serve as an expert witness for the defense, even though the trial court had granted Cage's motion for application of funds to hire such an expert. Cage claims that this failure irreparably damaged his defense.

¶21. When assessing an ineffective-assistance claim, this Court applies the two-pronged standard set by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The first prong of the *Strickland* test requires the appellant to show that counsel's performance was deficient. *Id.* at 686. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under the second prong, even if counsel's conduct is deemed to be

11

"professionally unreasonable," the jury's verdict must stand "if the error had no effect on the judgment." *Id.* at 691. Accordingly, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶22. "Generally, ineffective assistance claims are more appropriately brought during post-conviction proceedings." *Bateman v. State*, 125 So. 3d 616, 633 (Miss. 2013) (citing *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). "This is because during direct appeals the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Archer*, 986 So. 2d at 951. However, such a claim may be raised on direct appeal "if such issues are based on facts fully apparent from the record." Miss. R. App. P. 22(b).

¶23. We find that the record on appeal does not contain sufficient evidence for this Court to address Cage's ineffective-assistance claim. At trial, the State's expert witness testified that the DNA information collected from A.S.'s rape kit could not exclude Cage as a contributor. She also stated that the results of the DNA testing in this case would exclude more than ninety-nine percent of the population. The record does not reveal whether an independent DNA analyst would agree with or dispute the Crime Lab analysts' findings. Moreover, it is unclear whether Cage's trial counsel actually failed to procure the services of an expert witness after the trial court authorized funding for one, or whether she consulted an expert and chose not to call the expert at trial. The appropriate procedure in this case is to deny Cage's ineffective-assistance claim without prejudice, preserving his right to raise the issue through a petition for post-conviction relief. *See Archer*, 986 So. 2d at 955.

12

**IV. Whether the trial court erred in denying Cage's motion for a new trial, based on newly discovered juror misconduct.**

¶24. After the jury returned its verdict, Cage filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. In his motion, Cage argued that he was entitled to a new trial due to jury misconduct during the deliberation of Cage's guilt or innocence. Cage claimed that he had obtained newly discovered evidence indicating that one of the jurors who had served on his case had not answered a question truthfully during voir dire. On appeal, Cage argues that the interests of justice demand that he be granted a new trial based on this newly discovered evidence.

¶25. In support of his argument, Cage presents this Court with the affidavit of his aunt, Shella M. Head. This affidavit is not a part of the record from the trial court, but was attached to Cage's record excerpts on appeal. Cage filed a motion with this Court seeking to amend the record to include Head's affidavit. This Court dismissed Cage's motion, instructing him to seek relief from the trial court, but it appears that Cage failed to take any further action.

¶26. We find that Cage has failed to meet his obligation to provide a complete record of this issue on appeal. Accordingly, this issue is not properly before the Court. The appellant has a duty to justify his assignments of error with all the information necessary to establish an understanding of the matters relied upon for reversal. *Pauley v. State*, 113 So. 3d 557, 564 (Miss. 2013). In addition, this Court's consideration of issues on appeal "will be confined strictly to the record, both in terms of facts occurring prior to trial and to facts occurring since trial. This rule holds true regardless of the nature of the facts sought to be placed before this

13

Court[.]" *Phillips v. State*, 421 So. 2d 476, 478 (Miss. 1982). Cage failed to include in the record on appeal the transcript of the hearing on his post-trial motions and the trial court's order denying his post-trial motions. Furthermore, Head's affidavit is not a part of the record, as it was never presented to the trial court. Thus, this Court is unable to determine whether the trial court had an opportunity to review the jury-misconduct issue Cage now raises before this Court. Because Cage did not fulfill his duty to provide a complete record for this Court's review, we decline to address the merits of his argument.

## CONCLUSION

¶27. For the foregoing reasons, we affirm Cage's conviction and sentence.

¶28. **CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL PAY $500 ATTORNEY FEES AND $376 COURT FEES.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**