Electronic Document          Feb 26 2026 14:39:39          2023-M-00195          Pages: 6

Serial: 261250

## IN THE SUPREME COURT OF MISSISSIPPI

### No. 2023-M-00195

*JOE NATHAN HARRIS*                                                                  *Petitioner*

*v.*

*STATE OF MISSISSIPPI*                                                              *Respondent*

### <u>EN BANC ORDER</u>

Before the en banc Court is Joe Nathan Harris's Application for Leave to File Motion for Post-Conviction Collateral Relief.

Harris was convicted of capital murder and two counts of aggravated assault. He was sentenced as a habitual offender to two twenty-year terms for the aggravated-assault convictions and to life imprisonment for capital murder. The Court of Appeals affirmed. *Harris v. State*, 708 So. 2d 98 (Miss. Ct. App. 1998) (unpublished opinion).

Since then, Harris has filed four post-conviction applications. Order, *Harris v. State*, No. 2016-M-00014, at *1 (Miss. Dec. 13, 2018). The order dismissing the last application "warned that future filings deemed frivolous may result not only in monetary sanctions, but also in restrictions on his filing applications for post-conviction collateral relief (or pleadings in that nature) *in forma pauperis*." *Id.* at *2 (citing Order, *Dunn v. State*, 2016-M-01514 (Miss. Nov. 15, 2018)).

Here, Harris claims (1) defective indictment, (2) ineffective assistance of counsel, and (3) actual innocence.

After due consideration, we find that each claim is subject to two or more of the statutory bars. *See* Miss. Code Ann. §§ 99-39-5(2), -21(1), -27(9) (Rev. 2020); *Howell v. State*, 358 So. 3d 613, 615–16 (Miss. 2023). And even if an exception applies, the claims lack any arguable basis sufficient to surmount the bars. *See Means v. State*, 43 So. 3d

438, 442 (Miss. 2010).

We further find that the claims are frivolous and that sanctions are merited.

IT IS THEREFORE ORDERED that the application is denied.

IT IS FURTHER ORDERED that Harris is hereby restricted from filing further applications for post-conviction collateral relief (or pleadings in that nature) that are related to the subject convictions and sentences *in forma pauperis*. The Clerk of the Court shall not accept for filing any further applications for post-conviction collateral relief (or pleadings in that nature) from Harris that are related to the subject convictions and sentences unless he pays the applicable docket fee.

SO ORDERED.

TO DENY WITH SANCTIONS: RANDOLPH, C.J., ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ.

TO DENY: KING AND COLEMAN, P.JJ.

KING, P.J., OBJECTS TO THE ORDER WITH SEPARATE WRITTEN STATEMENT.

**DIGITAL SIGNATURE**
**Order#:** 261250
**Sig Serial:** 100011856
**Org:** SC
**Date:** 02/26/2026

David P. Sullivan, Justice

2

# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-M-00195

**Joe Nathan Harris**

**v.**

**State of Mississippi**

**KING, PRESIDING JUSTICE, OBJECTING TO THE ORDER WITH SEPARATE WRITTEN STATEMENT:**

¶1.     Today, this Court prioritizes efficiency over justice and bars Joe Nathan Harris from its doors. Because the imposition of monetary sanctions against indigent defendants and the restriction of access to the court system serve only to punish those defendants and to violate rights guaranteed by the United States and Mississippi Constitutions, I strongly oppose this Court's order restricting Harris from filing further petitions for post-conviction collateral relief *in forma pauperis*.

¶2.     This Court seems to tire of reading motions that it deems "frivolous" and imposes monetary sanctions on indigent defendants. The Court then bars those defendants, who in all likelihood are unable to pay the imposed sanctions, from future filings. In choosing to prioritize efficiency over justice, this Court forgets the oath that each justice took before assuming office. That oath stated in relevant part, "I . . . solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich . . . ." Miss. Const. art. 6, § 155. Yet this Court deems the frequency of Harris's filings to be too onerous a burden and decides to restrict Harris from filing subsequent applications for

post-conviction collateral relief. *See **In re McDonald***, 489 U.S. 180, 186–87, 109 S. Ct. 993, 997, 103 L. Ed. 2d 158 (1989) (Brennan, J., dissenting) ("I continue to find puzzling the Court's fervor in ensuring that rights granted to the poor are not abused, even when so doing actually increases the drain on our limited resources.").

¶3.     Article 3, section 25, of the Mississippi Constitution provides that "*no person* shall be debarred from prosecuting or defending *any civil cause for or against him or herself*, before any tribunal in the state, by him or herself, or counsel, or both." Miss. Const. art. 3, § 25 (emphasis added). Mississippi Code Section 99-39-7 provides that actions under the Uniform Post-Conviction Collateral Relief Act *are civil actions*. Miss. Code Ann. § 99-39-7 (Rev. 2020). Therefore, this State's Constitution grants unfettered access in civil causes to any tribunal in the State. The Court's decision to deny Harris's filing actions *in forma pauperis* is a violation of his State constitutional right to access to the courts.

¶4.     The decision to cut off an indigent defendant's right to proceed *in forma pauperis* is also a violation of that defendant's fundamental right to vindicate his constitutional rights, for

> Among the rights recognized by the Court as being fundamental are the rights to be free from invidious racial discrimination, to marry, to practice their religion, to communicate with free persons, to have due process in disciplinary proceedings, and to be free from cruel and unusual punishment. As a result of the recognition of these and other rights, the right of access to courts, which is necessary to vindicate all constitutional rights, also became a fundamental right.

Joseph T. Lukens, *The Prison Litigation Reform Act: Three Strikes and You're Out of Court-It May Be Effective, but Is It Constitutional?*, 70 Temp. L. Rev. 471, 474–75 (1997). As United States Supreme Court Justice Thurgood Marshall stated,

> In closing its doors today to another indigent litigant, the Court moves ever closer to the day when it leaves an indigent litigant with a meritorious claim out in the cold. And with each barrier that it places in the way of indigent litigants, and with each instance in which it castigates such litigants for having "abused the system," . . . the Court can only reinforce in the hearts and minds of our society's less fortunate members the unsettling message that their pleas are not welcome here.

***In re Demos***, 500 U.S. 16, 19, 111 S. Ct. 1569, 1571, 114 L. Ed. 2d 20 (1991) (Marshall, J., dissenting). Instead of simply denying or dismissing those motions that lack merit, the Court seeks to punish Harris for arguing his claims.

¶5.     Although each justice took an oath to do equal right to the poor and rich, this Court does not deny access to the court defendants who are fortunate enough to have monetary resources. Those defendants may file endless petitions, while indigent defendants are forced to sit silently by. An individual who, even incorrectly, believes that she has been deprived of her freedom should not be expected to sit silently by and wait to be forgotten. "Historically, the convictions with the best chances of being overturned were those that got *repeatedly reviewed on appeal* or those chosen by legal institutions such as the Innocence Project and the Center on Wrongful Convictions." Emily Barone, *The Wrongly Convicted: Why more falsely accused people are being exonerated today than ever before*, Time,

http://time.com/wrongly-convicted/ (emphasis added) (last visited Feb. 26, 2026). The

Washington Post reports that

> the average time served for the 1,625 exonerated individuals in the registry is more than nine years. Last year, three innocent murder defendants in Cleveland were exonerated 39 years after they were convicted—they spent their entire adult lives in prison—and even they were lucky: We know without doubt that the vast majority of innocent defendants who are convicted of crimes are never identified and cleared.

Samuel Gross, Opinion, *The Staggering Number of Wrongful Convictions in America*,

Washington Post (July 24, 2015), http://wapo.st/1SGHcyd?tid=ss_mail&utm_term=.4

bed8ad6f2cc.

¶6.     Rather than violating Harris's fundamental rights by restricting his access to the

courts, I would simply find his petition for post-conviction relief lacked merit.